| | |
|---|---|
| **TIYAN LITTLEJOHN**<br><br>**Plaintiff**<br><br>v.<br><br>**NATIONAL CREDIT SYSTEMS, INC., UNIVERSITY HOUSE CHARLOTTE, LP., EXPERIAN INFORMATION SOLUTIONS, INC., EQUIFAX INFORMATION SERVICES, LLC, and TRANSUNION, LLC.,**<br><br>**Defendant** | **COMPLAINT**<br><br>**WITH DEMAND FOR TRIAL BY JURY** |

**NOW COMES** Plaintiff, Tiyan Littlejohn, by and through Counsel, and pursuant to the Fair Credit Reporting Act ("FCRA") 15 U.S.C. §1681 *et seq*., 15 U.S.C. § 1692, *et seq*. (the FDCPA), N.C. Gen. Stat. § 58-70-90, *et seq*., and North Carolina common law, respectfully pleads to this Court the following:

## JURISDICTION AND VENUE

1. Jurisdiction is proper in this Court pursuant to 15 U.S.C. § 1681p, 28 U.S.C. § 1331, 28 U.S.C. § 1332, and 28 U.S.C. 1367.

2. Venue is proper in this Court pursuant to 28 U.S.C. §1391(b)(2).

3. This case is brought within two years of the alleged FCRA violations in compliance with the statute of limitations at 15 U.S.C. §1681p.

## PARTIES

4. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

5. Tiyan Littlejohn ("Plaintiff") is an individual and citizen of the State of North Carolina who currently resides in Mecklenburg County, North Carolina.

6. At all times relevant to this action the Plaintiff was a "consumer" as that term is defined by 15 U.S.C. § 1681a(c), because he is an individual.

7. At all times relevant to this action the Plaintiff was a "consumer" as defined by N.C. Gen. Stat. § 58-70-90(2), because the Defendants have alleged that he has incurred a debt with them.

8. The alleged debt at issue arose out of a transaction that was primarily for personal, family or household purposes because it is alleged to be for rent on an apartment.

9. National Credit System, Inc. (NCS), is a Georgia debt collector doing business in North Carolina as National Credit Services, Inc. of NC.

10. At all times relevant to this action NCS was a "person" as that term defined in 15 U.S.C. § 1681a(b), because he is an individual.

11. NCS can be reached for service through its service agent CT Corporation System, 150 Fayetteville Street, Raleigh, NC 27601.

12. At all times relevant to this action the NCS was a "Collection Agency" as defined by N.C. Gen. Stat. § 58-70-90(1), because it engaged directly in debt collection from the Plaintiff.

13. University House Charlotte, LP is a Limited Partnership doing business in North Carolina as "Boulevard 98" (BLVD98).

14. BLVD98 can be reached for service through its registered agent Floide Shelley at 602 Martin Luther King Jr Blvd., Chapel Hill, North Carolina, 27514.

15. Equifax Information Services, LLC (Equifax), is a Georgia limited liability company doing business throughout the country and in the state of North Carolina.

16. Equifax is a "consumer reporting agency" (CRA) as defined in 15 U.S.C. § 1681a(f).

17. Equifax can be reached for service through its registered agent, Corporation Service Company, at 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina 27608.

18. At all times relevant to this action Equifax was engaged in commerce in North Carolina by engaging in, *inter alia*, reporting of consumer credit information.

19. At all times relevant to this action Equifax was a "person" as that term defined in 15 U.S.C. § 1681a(b).

20. TransUnion, LLC ("TransUnion"), is a Delaware limited liability company doing business throughout the country and in the state of North Carolina.

21. TransUnion is a "consumer reporting agency" (CRA) as defined in 15 U.S.C. § 1681a(f).

22. TransUnion can be reached for service through its registered agent, The Prentice-Hall Corporation System, Inc., 2626 Glenwood Avenue, Suite 550, Raleigh, North Carolina, 27608.

23. At all times relevant to this action TransUnion was engaged in commerce in North Carolina by engaging in, *inter alia*, reporting of consumer credit information.

24. At all times relevant to this action TransUnion was a "person" as that term defined in 15 U.S.C. § 1681a(b).

25. Experian Information Solutions, Inc. (Experian), is an Ohio based company doing business in the state of North Carolina.

26. Experian is a "consumer reporting agency" (CRA) as defined in 15 U.S.C. § 1681a(f).

27. Experian can be reached for service through its registered agent, CT Corporation System at 160 Mine Lake Ct Ste 200, Raleigh, NC 27615-6417.

28. At all times relevant to this action Experian was engaged in commerce in North Carolina by engaging in, *inter alia*, reporting of consumer credit information.

29. At all times relevant to this action Experian was a "person" as that term defined in 15 U.S.C. § 1681a(b).

<u>**FACTUAL ALLEGATIONS**</u>

30. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

31. During the summer of 2019 the Plaintiff scheduled a tour of the apartments for lease owned by BLVD98.

32. At the beginning of the tour the Plaintiff was told that he needed to provide his driver's license to BLVD98 before he could tour the apartments.

33. At the time of the tour, the Plaintiff was accompanied by Terrance Mungro, a family friend.

34. Because the Plaintiff did not have the required credit history to rent an apartment, BLVD98 asked for his driver's license as well.

35. BLVD98 retained the physical driver's licenses of the Plaintiff and Mr. Mungro.

36. The person who conducted the tour of the apartments was Crystan Hunt.

37. Ms. Hunt represented to the Plaintiff and Mr. Mungro that she was the desk manager.

38. After the tour Ms. Hunt brought the Plaintiff and Mr. Mungro to the lobby of the apartment complex and discussed renting.

39. The Plaintiff clearly and unambiguously notified Ms. Hunt that because his mother was not present at the time, he would not be signing any lease.

40. Ms. Hunt informed that the Plaintiff would need a guarantor on the lease because of his income level at the time.

41. Ms. Hunt then represented to the Plaintiff that the tour was nonbinding, and he could apply after he consulted with his mother.

42. This ended the tour and the Plaintiff's interaction that day with BLVD98.

43. Within a week a Mr. Quinn called the Plaintiff's mother in an attempt to make her pay for a lease on the property.

44. The Plaintiff did not have a lease on the BLVD98 property and never has.

45. Mr. Quinn represented to the Plaintiff's mother that the Plaintiff had signed a contract with BLVD98.

46. This was not true because the Plaintiff has never signed a contract with BLVD98.

47. During this phone Mr. Quinn represented that the Plaintiff's mother owed the debt on the contract as well.

48. This was not true.

49. During these calls Mr. Quinn threatened to take the Plaintiff's mother to court over the alleged contract.

50. This threat was not proper because BLVD98 has never had any contract with the Plaintiff or his mother and so it has never had any right to sue the Plaintiff or his mother in contract.

51. This was also a threat to sue the Plaintiff since BLVD98 alleged that the Plaintiff was cosigned on the alleged contract.

52. During these events, Ms. Hunt and Mr. Quinn acted on behalf of, and agents for, BLVD98.

53. At one point Mr. Quinn spoke to Mr. Mungro by telephone.

54. During this time BLVD98 discussed the alleged debt of the Plaintiff to a third party.

55. Mr. Quinn communicated to Mr. Mungro that the Plaintiff had leased an apartment from BLVD98.

56. This was untrue, for the reasons stated herein.

57. By November of 2019 BLVD98 began reporting a trade line for the Plaintiff with the Credit Reporting Agencies (CRAs) Equifax, TransUnion and Experian.

58. On this trade line BLVD98 reported a delinquent debt of $8,498.

59. This was inaccurate and BLBD98 knew it was inaccurate.

60. The Plaintiff attempted to contact Mr. Quinn about this report but he would not speak to the Plaintiff about this trade line.

61. In February 2024, the Plaintiff discovered the fraud committed by BLVD98 when went to the office of BLVD98 and asked for a copy of the contract the Defendant said he was responsible for.

62. While there, the Plaintiff was not allowed to speak to Mr. Quinn.

63. The Plaintiff asked if BLVD98 had his mother's financial information

64. The employee who spoke with him said BLVD98 did have that information but would not provide that information to the Plaintiff.

65. The Plaintiff also asked for copies of the emails that were sent pertaining to the collection, as well the time stamps.

66. BLVD98 did not provide any of the things the Plaintiff requested and the employee made the Plaintiff leave the premises.

67. On May 15, 2023, the Plaintiff disputed the BLVD98 trade line with the CRAs Equifax, TransUnion and Experian.

68. Again, on July 11, 2023, the Plaintiff disputed the BLVD98 trade line with the CRAs Equifax, TransUnion and Experian.

69. In these disputes, the Plaintiff alerted all defendants that in 2019 he toured BLVD98, but never signed any documents, specifically any lease.

70. He also stated that his mother was not a signatory to any lease for him.

71. He further stated that reviews of the Defendant showed that this was a common practice for BLVD98.

72. Finally, he stated that he had been disputing this alleged debt for years to no avail.

73. BLVD98 continued to collect this alleged debt until March of 2024.

74. By November 2019, NCS began reporting a debt of $8,498 as due, owing, and delinquent to NCS with BLBD98 as the original creditor.

75. In these reports, NCS provided the account number of 423202X.

76. Mr. Littlejohn has never agreed to this account.

77. In these reports, NCS provided that the account was opened on "Nov. 24, 2019."

78. In these reports, NCS provided that the account was a "collection" account.

79. Those were false reports and NCS knew they were false.

80. In these reports, NCS reported that the responsibility of the account was "individual."

81. This information was reported to Equifax, TransUnion and Experian in the same manner.

82. This information has caused the damages described herein, including, but not limited to:

   a) The Plaintiff was not able to move form student housing because he was denied leases based on the inaccurate credit reporting by the Defendants.

   b) Because he could not move, he had to contend with vermin infestations which caused him to lose personal property.

   c) The Plaintiff was forced to live with his brother, which is embarrassing and costly.

   d) The Plaintiff was required to commute longer to work, adding miles to his vehicle which would not have occurred if he had been able to acquire an apartment lease near his employment.

e) The Plaintiff has experienced emotional distress due to these issues, which necessitated therapy and due to a manic episode in May of 2021.

f) The Plaintiff was forced to rehome his pet dog because he could not find his own apartment, which made his mental anguish much worse.

83. As a result of Defendants' conduct, Plaintiff has suffered physical, emotional and mental pain and anguish, and the Plaintiff will continue to suffer the same for an indefinite time in the future, all to the Plaintiff's detriment and loss.

84. As a result of Defendants' conduct, Plaintiff has suffered actual damages in the form of financial and dignitary harm and emotional distress arising from the injury to credit rating and reputation, and the Plaintiff will continue to suffer the same for an indefinite time in the future, all to the Plaintiff's detriment and loss. Examples of these damages include, but are not limited to:

a) At least two denied leases.

b) Lowered credit score.

c) Denied credit lines.

d) Denied auto repair credit line

e) Inability to move because of credit denials.

85. Plaintiff has suffered a decreased credit score as a result of the misreported trade lines appearing on the Plaintiff's credit file.

86. At all times pertinent hereto, Defendants were acting by and through their agents, servants and/or employees who were acting within the course and scope of their agency or employment, and under the direct supervision and control of the Defendants herein.

87. At all times pertinent hereto, the conduct of the Defendants, as well as that of their agents, servants and/or employees, was malicious, intentional, willful, reckless, and in grossly negligent disregard for federal and state laws and the rights of the Plaintiff herein.

## **VIOLATIONS OF THE FAIR CREDIT REPORTING ACT**

**National Credit System**

88. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

89. NCS was properly noticed by the Plaintiff that the reported collection action as described herein should not have been reported on the Plaintiff's credit report as it was reporting to the CRAs.

90. The CRAs noticed NCS of the inaccuracies on the Plaintiff's credit reports.

91. NCS had in its records all of the information relevant to the account in question and chose to report the Plaintiff as delinquent when NCS knew that the Plaintiff was not delinquent.

92. NCS chose to report the Plaintiff as having an account that was owed when it knew the Plaintiff did not owe anything to NCS or BLVD98.

93. NCS knows that the information it provided to the CRAs about the Plaintiff is inaccurate because of its own records.

94. Plaintiff contacted Equifax, TransUnion and Experian repeatedly to dispute the accuracy of the information being reported about them.

95. Upon information and belief, pursuant to 15 U.S.C. § 1681i(a)(2), NCS received notification of this dispute from Equifax, TransUnion and Experian.

96. NCS has repeatedly failed to conduct a reasonable investigation into the accuracy of information related to the disputed trade line, in violation of 15 U.S.C. § 1681s-2(b)(1).

97. Notwithstanding NCS's actual knowledge that Plaintiff's trade line should not be reported as due, owing, and delinquent, NCS's failure to conduct a reasonable investigation of the accuracy of its reporting of this adverse information shows an intentional and reckless disregard for Plaintiff's rights under the FCRA.

98. In addition to the violation as described above, NCS failed to satisfy its duty under 15 U.S.C. § 1681s-2(b) of updating incomplete or inaccurate information it had previously reported to CRAs upon receipt of each notice from Equifax, TransUnion and Experian that Plaintiff disputed the accuracy of the previously reported information.

99. Any collection reported on the Plaintiff's account was due to NCS's conduct and purposely or recklessly inaccurate record keeping and not due to financial irresponsibility on behalf of the Plaintiff.

100. The information that NCS had furnished to the CRAs to be published was false, and NCS knew it was false.

101. This information showed the Plaintiff to be an irresponsible consumer when he is not.

102. As a direct and proximate result of NCS's willful and/or negligent refusal to comply with the FCRA as outlined above, Plaintiff has suffered substantial loss and damage as described herein, entitling the Plaintiff to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

**Equifax**

103. Equifax willfully and recklessly or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of 15 U.S.C. §1681e(b).

104. Equifax knew, or has sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it is circulated was extremely inaccurate and damaging to Plaintiff.

105. Despite actual and implied knowledge that it was publishing inaccurate accounts on the Plaintiff's credit reports, Equifax readily sold false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

106. Equifax published the same incorrect information multiple times.

107. Plaintiff was unable to obtain certain credit extensions, as described herein, because of the grossly inaccurate credit file maintained by Equifax.

108. Plaintiff has suffered out-of-pocket loss as a result of Equifax's willful or reckless and negligent violations of the FCRA.

109. Plaintiff has not been free to take advantage of various credit opportunities available to other consumers because of Equifax's failure to report only accurate information about the Plaintiff.

110. As a direct and proximate result of Equifax's actions as alleged herein, the Plaintiff has suffered loss and damage as listed above as well as damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling the Plaintiff to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

111. Upon information and belief, Equifax has been sued on multiple occasions over recent years for actions similar to the actions listed in this complaint.

112. Upon information and belief, Equifax has exhibited a pattern of refusing to conform its practices the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

113. Equifax's pattern of refusal to conduct its business in accordance with the FCRA reveals a conscious disregard of the rights of this Plaintiff and other consumers.

114. Equifax's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of this Plaintiff and other consumers.

115. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages against Defendant, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

**TransUnion**

116. TransUnion willfully and recklessly or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of 15 U.S.C. §1681e(b).

117. TransUnion knew, or has sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it is circulated was extremely inaccurate and damaging to Plaintiff.

118. Despite actual and implied knowledge that it was publishing inaccurate accounts on the Plaintiff's credit reports, TransUnion readily sold false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

119. TransUnion published the same incorrect information multiple times.

120. Plaintiff was unable to obtain certain credit extensions, as described herein, because of the grossly inaccurate credit file maintained by TransUnion.

121. Plaintiff has suffered out-of-pocket loss as a result of TransUnion's willful or reckless and negligent violations of the FCRA.

122. Plaintiff has not been free to take advantage of various credit opportunities available to other consumers because of TransUnion's failure to report only accurate information about the Plaintiff.

123. As a direct and proximate result of TransUnion's actions as alleged herein, the Plaintiff has suffered loss and damage as listed above as well as damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling the Plaintiff to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

124. Upon information and belief, TransUnion has been sued on multiple occasions over recent years for actions similar to the actions listed in this complaint.

125. Upon information and belief, TransUnion has exhibited a pattern of refusing to conform its practices the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

126. TransUnion's pattern of refusal to conduct its business in accordance with the FCRA reveals a conscious disregard of the rights of Plaintiff and other consumers.

127. TransUnion's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of the Plaintiff and other consumers.

128. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages against TransUnion, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

**Experian**

129. Experian willfully and recklessly or negligently failed to follow reasonable procedures to assure maximum possible accuracy of the consumer reports it prepared and/or published pertaining to Plaintiff, in violation of 15 U.S.C. §1681e(b).

130. Experian knew, or has sufficient reason to know, that when it prepared and sold a consumer report about Plaintiff, the information it is circulated was extremely inaccurate and damaging to Plaintiff.

131. Despite actual and implied knowledge that it was publishing inaccurate accounts on the Plaintiff's credit reports, Experian readily sold false reports to one or more third parties, thereby misrepresenting Plaintiff, and ultimately, Plaintiff's creditworthiness.

132. Experian published the same incorrect information multiple times.

133. Plaintiff was unable to obtain certain credit extensions, as described herein, because of the grossly inaccurate credit file maintained by Experian.

134. Plaintiff has suffered out-of-pocket loss as a result of Experian's willful or reckless and negligent violations of the FCRA.

135. Plaintiff has not been free to take advantage of various credit opportunities available to other consumers because of Equifax's failure to report only accurate information about the Plaintiff.

136. As a direct and proximate result of Experian's actions as alleged herein, the Plaintiff has suffered loss and damage as listed above as well as damage to reputation, expenditure of considerable time and out-of-pocket expenses, worry, fear, distress, frustration and embarrassment, entitling the Plaintiff to an award of actual damages in amounts to be proved at trial, plus attorneys' fees together with the costs of this action pursuant to 15 U.S.C. § 1681o.

137. Upon information and belief, Experian has been sued on multiple occasions over recent years for actions similar to the actions listed in this complaint.

138. Upon information and belief, Experian has exhibited a pattern of refusing to conform its practices the FCRA, ultimately valuing its own bottom line above its "grave responsibility" to report accurate data on consumers.

139. Experian's pattern of refusal to conduct its business in accordance with the FCRA reveals a conscious disregard of the rights of Plaintiff and other consumers.

140. Experian's pattern of refusal to correct patently false information as mandated by the FCRA reveals a conscious disregard of the rights of the Plaintiff and other consumers.

141. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages, an assessment of punitive damages against Experian, plus attorneys' fees and costs pursuant to 15 U.S.C. § 1681n.

## **FRAUD BY FORGERY**

142. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

143. BLVD98 committed common law fraud through its forgery of Mr. Littlejohn's signature to a contract.

144. The elements of this fraud are as follows (*see Ragsdale v. Kennedy*, 286 N.C. 130, 138 (1974):

a) The false representation of a material fact: Mr. Litteljohn did not sign the contract but BLVD98 represents that he did in order to pursue a debt against him.

b) Reasonably calculated to deceive: the signature was created in a way that others would rely on the idea that it was Mr. Littlejohn's signature.

c) Made with intent to deceive: the forgery was used to make others think that Mr. Littlejohn signed when he did not sign it, and BLVD98 never disclaimed its legitimacy to protect others from thinking it as a legitimate signature.

d) Which does in fact deceive: initially NCS and others believed that this was Mr. Littlejohn's signature.

e) Resulting in damage to the injured party: the forgery has caused all of the damages alleged in this complaint, but not limited to lowered credit score and the inability to rent an apartment.

145. This fraud occurred the day BLVD98 forged Mr. Littlejohn's signature, at its offices and through its employees and officers.

## EQUITABLE TOLLING

146. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

147. Our Supreme Court has found that equitable tolling applies in cases such as this:

> [W]here a plaintiff has been injured by fraud and remains in ignorance of it without any fault or want of diligence or care on his part, the bar of the statute does not begin to run until the fraud is discovered, though there be no special circumstances or efforts on the part of the party committing the fraud to conceal it from the knowledge of the other party.

*Holmberg v. Armbrecht*, 327 U.S. 392, 397 (1946). "This equitable doctrine is read into every federal statute of limitation." *Id*.

148. See also, *Rotkiske v Klemm*, 589 U.S. 8 (2019), which applies equitable tolling to the FDCPA.

149. The Plaintiff was injured by the fraud described herein,

150. The Plaintiff was ignorant of the fraud through no fault or lack of diligence on his part.

151. The claims in this Complaint are not barred because the fraud of the Defendant was unknown to the Plaintiff until very recently.

### N.C. GEN. STAT. § 58-70-90 *et seq.*

152. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein

153. At all times relevant to the allegations in this complaint, BLVD98 collected an alleged debt that it claimed the Plaintiff owed.

154. BLVD98 knew that the Plaintiff did not owe the debt it attempted to collect.

155. BLVD98 made the false accusation to another person, including a credit reporting agency, the Plaintiff's mother and the Plaintiff's family friend, that the Plaintiff had not paid, or the Plaintiff refused to pay, a just debt.

156. This behavior constitutes a specific violation of N. C. Gen. Stat. § 58-70-95(3).

157. BLVD98 threatened to sue the Plaintiff and the Plaintiff's mother over the alleged debt.

158. BLVD98 had no right to sue the Plaintiff or the Plaintiff's mother.

159. This behavior constitutes a specific violation of N. C. Gen. Stat. § 58-70-95(8).

160. BLVD98 falsely represented the character, extent, or amount of a debt against the Plaintiff.

161. This behavior constitutes a specific violation of N. C. Gen. Stat. § 58-70-110(4).

162. These acts caused damages as described herein.

163. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct, calling for statutory damages of the actual damages plus civil

penalties pursuant to N.C. Gen. Stat. § 58-70-130(b) as well as attorneys' fees and costs pursuant to N.C. Gen. Stat. § 75-16.1.

## 15 U.S.C. § 1692, *et seq.*, THE FDCPA

164. The allegations of the preceding paragraphs are re-alleged and incorporated by reference as if set forth fully herein.

165. BLVD98 made the false accusation to another person, including a credit reporting agency, the Plaintiff's mother, and the Plaintiff's family friend, that the Plaintiff had not paid, or the Plaintiff refused to pay, a just debt.

166. This behavior constitutes a specific violation of 15 U.S.C. § 1692c(b).

167. BLVD98 falsely represented the character, extent, or amount of a debt against the Plaintiff.

168. This behavior constitutes a specific violation of 15 U.S.C. § 1692e(2)(A).

169. BLVD98 threatened to sue the Plaintiff and the Plaintiff's mother over the alleged debt.

170. BLVD98 had no right to sue the Plaintiff or the Plaintiff's mother.

171. This behavior constitutes a specific violation of 15 U.S.C. § 1692e(5).

172. These acts caused damages as described herein.

173. The injuries suffered by Plaintiff are attended by circumstances of fraud, malice, and/or willful and wanton misconduct.

174. As a result of Defendant's violations of the FDCPA, Plaintiff is entitled to actual damages pursuant to 15 U.S.C. § 1692k(a)(1); statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A); and, reasonable attorney's fees and costs pursuant to 15 U.S.C. § 1692k(a)(3).

## DEMAND FOR JURY TRIAL

175. Plaintiff exercises the right to a trial by jury on all issues so triable.

**WHEREFORE,** the Plaintiff respectfully requests the following relief from the Court:

1. Compensatory damages in an amount to be determined at trial that will fairly and reasonably compensate the Plaintiff for the physical injury and pain, emotional distress, aggravation, annoyance, humiliation, and financial hardship suffered as a result of the Defendants' unlawful acts;

2. Punitive damages in an amount to be determined at trial for the willful, wanton and/or reckless disregard for his legal rights;

3. Actual damages in an amount to be determined at trial and statutory damages of $1,000.00 pursuant to the violations of the FDCPA alleged herein;

4. Costs of litigation and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3) from each and every Defendant jointly and severally;

5. Costs of suit, any discretionary costs as may be allowable by law, pre-judgment and post-judgment interest from each and every Defendant jointly and severally;

6. Actual damages to be determined at trial and statutory damages of $4,000 per violation as allowed pursuant to N. C. Gen. Stat. § 58-70-130(a) and (b).;

7. Costs and reasonable attorney's fees pursuant to N.C. Gen. Stat. §§ 75-16.1; and,

8. For such other and further relief as this Court may deem just, equitable and proper.

**TODAY** is September 17, 2024.

|  | **WILLIAMS & PERRY** |
|---|---|
| By: | */s/ M. Shane Perry* |
|  | M. Shane Perry |
|  | NC Bar Number: 35498 |
|  | 109 W. Statesville Ave. |
|  | Mooresville, NC 28115 |
|  | Telephone: 704-663-4187 |
|  | Facsimile: 704-663-4178 |
|  | shane@williamsperry.com |
|  | *Attorney for Plaintiff* |