UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NORTH CAROLINA
CHARLOTTE DIVISION

| | |
|---|---|
| TIYAN LITTLEJOHN, | * |
| | * |
| Plaintiff; | * |
| | * |
| | * |
| v. | * Case No. 3:24-CV-840-MOC- SCR |
| | * |
| NATIONAL CREDIT SYSTEMS, INC., | * |
| UNIVERSITY HOUSE CHARLOTTE, | * |
| L.P., EXPERIAN INFORMATION | * |
| SOLUTIONS, INC., EQUIFAX | * |
| INFORMATION SERVICES, LLC, and | * |
| TRANSUNION, LLC., | * |
| | * |
| Defendants. | * |

**REPLY MEMORANDUM IN SUPPORT OF
MOTION FOR SUMMARY JUDGMENT**

Defendant, National Credit Systems, Inc. ("NCS") submits this reply memorandum in further support of summary judgment and in response to the opposition filed by plaintiff (Doc. 30).

**INTRODUCTION**

Plaintiff asserts two claims against NCS: a § 1681s-2(b) claim under the FCRA; and a § 1692c(b) claim under the FDCPA. NCS asserts three arguments as to why the FCRA claim fails.

First, the lease debt was accurately reported. This defense is contingent on plaintiff proving, which despite his admittedly hazy recollection of the events six years ago, he did not sign. Faced with incontrovertible evidence that his name is electronically affixed to the agreement,

plaintiff asserts the implausible claim that UHC forged his signature. The forgery theory is speculative at best, unsupported by any evidence whatsoever, and should be rejected by the Court.[1]

Second, if the Court were to determine that the lease signature issue cannot be determined as a matter of law, the FCRA claim is directly foreclosed by *Roberts v. Carter-Young, Inc.*, 131 F.4th 241 (4th Cir. 2025).

> A dispute that involves complex fact-gathering and in-depth legal analysis of the sort that courts would typically perform is not objectively and readily verifiable. Additionally, a dispute that implicates unsettled questions of law and requires credibility determinations and quasi-discovery is not either.

*Id*. at 251. The dispute in this case presents a precise application of the binding *Roberts* precedent and falls well outside the types of disputes regulated under the FCRA.

Third, the ACDV investigation was reasonable. Reasonableness "is based on an evaluation of information within the furnisher's possession, such as correspondence between the consumer and the furnisher, the data identified by the reporting agency as disputed, and the furnisher's other records relating to the disputed account." *Manos v. Freedom Mortg. Corp.*, 2021 U.S. Dist. LEXIS 43504, *9 (W.D.N.C. Mar. 8, 2021) (citation omitted). As demonstrated in its original memorandum, NCS investigations in response to the ACDV's were reasonable. Any suggestion that NCS should have or could have done more than what is required under the FCRA places the investigation squarely within the type of investigation requirements foreclosed by *Roberts*.

Finally, plaintiff asserted a single FDCPA claim. As demonstrated in NCS's original memorandum, the § 1692c(b) claim fails as a matter of law. Plaintiff's argument in opposition that NCS potentially violated or did violate some other FDCPA provisions is immaterial and not

---

[1] As a party to the subject housing agreement, UHC is in the best position to defeat the fraud claim. Accordingly, NCS adopts the arguments and evidence asserted by UHC

2

Case 3:24-cv-00840-MOC-SCR     Document 32     Filed 01/12/26     Page 2 of 8

before the Court. Courts may only consider legal claims made in the complaint. *See Barclay White Skanska, Inc. v. Battelle Mem. Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008).

**LAW AND ARGUMENT**

**A.     Accuracy Provides a Complete Defense**

Plaintiff does not dispute the balance of the account or some other specific detail regarding the account. Rather, plaintiff claims he is not responsible for the debt because he did not sign the housing agreement. If plaintiff did sign the housing agreement, the debt was accurately reported in his name and NCS has a complete defense to the FCRA claim.

Despite plaintiff's hazy recollection of the surrounding events six years ago and his testimony that he did not sign the agreement, the evidence is overwhelmingly to the contrary. Plaintiff admits he signed the application, which required plaintiff to set up a password in a secure portal. The same password was used and secure portal accessed to sign the housing agreement. It is undisputed that plaintiff's electronic signature appears on the housing agreement. The only explanation offered by plaintiff is that his signature was forged by UHC. However, other than speculation and conjecture, plaintiff offers no evidence whatsoever to support this contention. *See Ennis v. Nat'l Ass'n of Bus. & Educ. Radio, Inc.,* 53 F.3d 55, 62 (4th Cir. 1995) (unsupported speculation insufficient to defeat summary judgment).[2] On the other hand, as set forth in defendants' initial memoranda, the record is replete with evidence that UHC would have no ability to forge plaintiff's name and that the forgery theory is simply implausible. If a claim is implausible

---

[2] Plaintiff alleges that the IP address currently "pings" to a Rome, Georgia address, and this is evidence of fraud. Aside from inadmissible hearsay, this is purely speculative as plaintiff has not provided any testimony, expert or otherwise, to establish the significance or applicability of this at the time he executed the housing agreement.

3

and without persuasive evidence in support, it should be dismissed on summary judgment. *See N.C. Elec. Membership Corp. v. Carolina Power & Light Co.*, 780 F. Supp. 322, 335 (M.D.N.C. 1991).

The only plausible conclusion is that plaintiff is simply mistaken or forgetful as to what actions he took six years ago, and/or did not realize the import of electronically signing the housing agreement. Instead of asserting a traditional defense to contract formation, plaintiff attempts to manufacture an even more implausible claim that a UHC representative fraudulently signed his name to the housing agreement. Plaintiff's argument should be disregarded and summary judgment entered in favor of NCS dismissing the FCRA claim on the basis of accuracy.

### B. The Dispute Is Not Subject to FCRA Regulation

NCS relies on its original memorandum and will not re-argue the application of *Roberts v. Carter-Young, Inc.,* 131 F.4th 241 (4th Cir. 2025), but will address one argument raised by plaintiff in opposition.

Plaintiff attempts to couch his dispute as factual in nature rather than legal and argues that this characterization somehow precludes application of *Roberts*. That is incorrect. Per *Roberts*, both factual and legal disputes, or some mixture of the two, can form the basis of a § 1681s-2(b) claim, *so long as they are objectively and readily verifiable*. *See id.* at 252. No doubt that in some instances a claim that an alleged debt never occurred may be objectively and readily verifiable, but the very fact that this claim is before the court for adjudication establishes that this one is not. While plaintiff did not undertake such a process in the course of *litigation*, plaintiff suggests that NCS, during its limited period to investigate a dispute, could have retained an expert in the course of its ACDV investigations to analyze the IP addresses and "pings" to determine the location of

4

computer on which the housing agreement was accessed and signed, and then confirm with Plaintiff that he had been in the location at that time. On the dubious assumption that this type of investigation would have resolved anything, it certainly does not present a readily verifiable process to conduct an ACDV investigation.

Inaccuracies that are objectively and readily verifiable do not include claims of tortious conduct that require a furnisher to evaluate the subjective nature of the parties' actions. This dispute plainly falls squarely under the *Roberts* analysis, which mandates the FCRA claim be dismissed.

### C. NCS's Investigation Was Reasonable

NCS relies on its original memorandum and the Declaration of Ron Sapp (Doc. 24-8). Plaintiff alleges that the purported fraud was done in such a manner as to prevent detection by NCS. Yet, according to plaintiff, NCS was required to go beyond review of the housing agreement signatures and logs, and consultation with UHC. Plaintiff suggests that NCS should have contacted UHC's third party vendor Entrata to request the digital trail, although this is already documented on the housing agreement as part of the signature process. Remarkably, plaintiff then asserts that NCS would have learned that Entrata would have no evidence that plaintiff signed the document. This is complete supposition. There is no record evidence at all as to what Entrata may or may not have.[3]

UHC maintained and continues to maintain that plaintiff signed the lease agreement. Plaintiff maintains he did not. The dispute between UHC and plaintiff is not and never will be

---

[3] Further, plaintiff provides no support for the proposition that even if Entrata had documentation beyond what was already affixed to the housing agreement, Entrata would have released any information to an entity that was not a party to the agreement.

5

"readily verifiable" until a determination is made by a tribunal. Accordingly, the investigation requirements in this instance circle back to *Roberts*. Per *Roberts*, the FCRA does not impose a duty on a furnisher to investigate and resolve an alleged fraud issue, or any issue, unless the dispute is readily and objectively verifiable. The FCRA does not impose a duty on a furnisher to prove the validity of a debt and resolve a dispute that requires quasi-discovery and/or resolution of credibility issues. Simply put, the FCRA dispute procedures were not intended to and do not provide a process by which to resolve disputes that can only be resolved by adjudication. The FCRA dispute process is not appropriate vehicle to remedy this dispute.

### D. NCS's Conduct Was Not Willful

Plaintiff asserts that willfulness requires an assessment of state of mind, which is not amenable to summary judgment. However, courts routinely grant summary judgment on FCRA willfulness claims. *Guthrie v. PHH Mortg. Corp.*, No. 2022 U.S. Dist. LEXIS 40690 (E.D.N.C. Mar. 4, 2022), vacated in unrelated part, *Guthrie v. PHH Mortg. Corp.*, 79 F.4th 328 (4th Cir. 2023), is instructive:

> Recognizing that summary judgment is typically not appropriate on whether a party acted with a particular state of mind [ ] there is nothing in this record that would support a reasonable juror in concluding that defendant knowingly and intentionally acted in conscious disregard of plaintiff's rights. To that end, plaintiff's response to defendant's motion for summary judgment on this issue consists only of his argument that the issue should go to a jury. This is insufficient to rebut defendant's request for summary judgment. Defendant is entitled to summary judgment on this claim.

*Id.*, *30.

Willfulness requires a plaintiff show that the defendant "knowingly and intentionally committed an act in conscious disregard for the rights of the consumer." *Id.*, *29-30. NCS maintains its investigations were reasonable and complied with FCRA requirements but even if

6

the Court were to find some aspect of the investigation was negligent, the evidence amply demonstrates NCS's conduct did not rise to the level of willfulness.

### E. The FDCPA Claim Fails as a Matter of Law

Plaintiff asserts a single FDCPA claim under § 1692c(b). NCS's original memorandum fully addresses why this claim fails. Recognizing this circumstance, plaintiff argues in opposition that he can amend to assert other FDCPA claims. Whether the Court would grant leave at this juncture to amend and assert new claims remains to be seen but the Court may only consider legal claims in the complaint. *See Barclay White Skanska, Inc. v. Battelle Mem. Inst.*, 262 F. App'x 556, 563 (4th Cir. 2008) (a plaintiff may not amend the complaint through argument in a brief opposing summary judgment); *Cloaninger ex rel. Estate of Cloaninger v. McDevitt*, 555 F.3d 324, 336 (4th Cir. 2009) (at the summary judgement stage, a plaintiff may not raise a new claim without amending his complaint); *Brass v. SPX Corp.*, 2019 U.S. Dist. LEXIS 222888, *2 (W.D.N.C. Dec. 31, 2019) (courts routinely refuse to consider legal theories not alleged in the complaint and raised for the first time in a brief in opposition to a motion for summary judgment).

The FDCPA claim fails for the reasons stated and should be dismissed.

### CONCLUSION

For the reasons set forth, the two claims asserted against NCS, FCRA § 1681s-2(b) and FDCPA § 1692c(b), fail on multiple grounds and summary judgment should be entered dismissing NCS with prejudice.

Dated: January 12, 2026   Respectfully submitted,

*/s/ Brian D. Roth*
Brian D. Roth (18415)
Sessions, Israel & Shartle, LLC
Lakeway Three, Suite 2800

7
Case 3:24-cv-00840-MOC-SCR   Document 32   Filed 01/12/26   Page 7 of 8

3838 North Causeway Boulevard
Metairie, LA  70002-7227
Telephone: (504) 846-7903
Facsimile: (504) 828-3737
Email: broth@sessions.legal

*Counsel for Defendant,*
*National Credit Systems, Inc.*


### CERTIFICATION

1. No artificial intelligence was employed in doing the research for the preparation of this document, with the exception of such artificial intelligence embedded in the standard on-line legal research sources Westlaw, Lexis, FastCase, and Bloomberg;

2. Every statement and every citation to an authority contained in this document has been checked by an attorney in this case and/or a paralegal working at his/her direction (or the party making the filing if acting pro se) as to the accuracy of the proposition for which it is offered, and the citation to authority provided.

/s *Brian D. Roth*